IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | | |
|---|---|---|
| TERESA M. MUNIZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 6:12-CV-0017-JO |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of | ) | OPINION AND ORDER |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

JONES, J.,

Plaintiff Teresa Muniz appeals the Commissioner's decision denying her concurrent applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

## PRIOR PROCEEDINGS

Muniz satisfied the insured status requirements of the Social Security Act through December 31, 2009. She must establish that she was disabled on or before that date to prevail on her Title II claim. 42 U.S.C. § 423(a)(1)(A). *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998).

Muniz filed her initial applications in March 2009 alleging disability beginning in March 2006 due to mental health problems. She allegedly stopped working because depression and anxiety made her unable to leave her house or to be around others. Later, Muniz amended the alleged onset of disability to June 2009, and alleged physical impairments in addition to the mental problems she had initially claimed. Muniz said she had a seizure disorder, chronic obstructive pulmonary disease ("COPD"), irregular heart beat, borderline diabetes, severe back pain, and medication side effects causing loss of concentration and disorientation.

The ALJ applied the sequential disability determination process described in 20 C.F.R. sections 404.1520 and 416.920. *See Bowen v. Yuckert,* 482 U.S. 137, 140 (1987). The ALJ found that lumbago and a seizure disorder limited Muniz's ability to work. Her other alleged impairments were either not established by medical evidence or did not significantly limit Muniz's ability to perform basic work activities. The ALJ found that, despite her impairments, Muniz retained the residual functional capacity ("RFC") to perform light unskilled work that does not involve more than occasional climbing, crouching, crawling, and kneeling and does not require commercial driving or exposure to hazards such as unprotected heights and moving machinery.

The ALJ determined that Muniz remained capable of performing work she had done in the past as a cashier. In addition, the vocational expert testified that a person having Muniz's RFC could perform the activities required in light, unskilled occupations such as hand packer, assembler, and

sorter, representing hundreds of thousands of jobs in the national economy. The ALJ concluded that Muniz was not disabled within the meaning of the Social Security Act because she could perform her past work and, in the alternative, because she could perform other jobs in the national economy.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Under this standard, the Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record even if evidence exists to support another rational interpretation. *Batson*, 359 F.3d at 1193; *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

### I.   Claims of Error

Muniz contends the ALJ failed to assess her RFC accurately because she misinterpreted an MRI study, gave weight to the opinion of agency reviewing consultant Neal Berner, M.D., and failed to include the need for a wheelchair in her RFC assessment. Muniz also contends the Appeals Council erred by failing to provide her with a transcript of the hearing testimony before declining to review the ALJ's decision.

### II.   RFC Assessment

A claimant's RFC assessment describes the work-related activities the claimant can still do despite the functional limitations imposed by her impairments. 20 C.F.R. §§ 404.1545; 416.945; Social Security Ruling ("SSR") 96-8p, 1996 WL 374184. The ALJ must base her RFC assessment on all the relevant evidence in the case record, and must resolve conflicts in the evidence. SSR 96-

8p, 1996 WL 374184 * 5; *Batson,* 359 F.3d at 1195. Muniz does not claim that the ALJ applied improper legal standards. She challenges the ALJ's factual conclusions regarding her RFC on the grounds that the ALJ misread a 2011 MRI report, gave undue weight to the opinion of Dr. Berner and less weight to other medical opinions, and discounted her claim that she requires a wheelchair. Muniz bears the burden of showing that the ALJ erred and that the errors were harmful. *McLeod v. Astrue,* 640 F.3d 881, 886-87 (9th Cir. 2011).

A.     **MRI Study**

On January 12, 2011, Sandra Schimel, M.D., obtained MR images of Muniz's lumbar spine to evaluate her complaints of low back pain. The images were generally normal with mild degenerative changes. At the L4-L5 disc space, however, there was central canal narrowing, compromise of the axillary nerve root sleeves, and narrowing of the foraminal space through which the nerve roots exit the vertebra. Admin. R. 519.

In her review of the medical evidence, the ALJ said that this MRI "showed spondylitic disease, but no impingement on the neural structures or spinal cord." Admin. R. 20. Muniz argues that this description is inaccurate because the foraminal space, in her view, falls within the definition of "neural structure." Pltf.'s Brief 11. It is not necessary to resolve the definition of this medical term. The ALJ's description reasonably conveyed the point that Dr. Schimel saw no impingement of the spinal cord or nerve roots themselves, although there was narrowing from degeneration of the bony structures and impingement of the fatty nerve root sleeves. Accordingly, Muniz's argument that the ALJ erred in a meaningful way is not persuasive.

Muniz contends the ALJ's faulty interpretation of the MRI study tainted her determinations that Muniz was not fully credible and that she remains capable of light work. Those determinations,

4 - OPINION AND ORDER

however, were based on the record as a whole, and did not depend on her interpretation of the MRI study. The ALJ found that Muniz lacked credibility because she: exaggerated the intensity, persistence, and limiting effects of her symptoms; did not allege any physical limitation when she filed her applications in March 2009 yet later claimed she required a walker as early as 2005 and a wheelchair by 2008; alleged limitations from impairments for which there was no medical evidence; engaged in activities while incarcerated by the Oregon Department of Corrections from September 2007 until April 2009 that were inconsistent with the limitations she claimed; and had a history of engaging in multiple fraudulent criminal activities. Admin. R. 18-19.

In light of these other grounds for discounting her credibility, which Muniz does not challenge, the credibility determination must be upheld even if the ALJ's interpretation of the MRI study was erroneous. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (where one of the ALJ's reasons for discounting credibility is invalid, the error is harmless if the remaining reasons and the ultimate credibility conclusion are supported by substantial evidence in the record); *Batson,* 359 F.3d at 1197 (so long as there remains substantial evidence to support the ALJ's findings on credibility, reliance on an invalid reason does not negate the ultimate credibility determination).

Similarly, the ALJ's interpretation of the MRI study was not essential to her RFC assessment. A claimant's RFC assessment describes the work-related activities the claimant can still do despite the functional limitations imposed by her impairments. 20 C.F.R. §§ 404.1545; 416.945. Dr. Schimel, in her MRI report, said nothing about the functional limitations that might result from the degenerative changes shown. She did not comment about the work-related activities that might be

precluded. The ALJ restricted Muniz to light work with postural limitations to accommodate her chronic low back pain and nothing in the MRI study suggests greater limitations.

The ALJ noted clinical findings from physical examinations in 2009, 2010, and 2011 showing that Muniz had full strength, sensation, reflexes, and range of motion, without clinical signs of neurological deficits. For example, her straight leg raise testing did not suggest radiculopathy. In April 2011, Muniz began to show diminished strength and range of motion in the lower extremities, but her gait and motor examination remained normal. Admin. R. 19-20. The ALJ also relied on evidence that during the time she was allegedly disabled, Muniz ran several miles daily, used an exercise bicycle, and worked in the kitchen while incarcerated. Admin. R. 18. Muniz does not challenge any of the evidence summarized here, and the ALJ reasonably found it more indicative of the ability to perform light work than of complete disability. Because the ALJ's RFC assessment remains supported by the foregoing evidence and because the MRI study does not mention functional limitations, any error in the ALJ's interpretation of the MRI study was inconsequential to the RFC assessment. *Carmickle*, 533 F.3d at 1162; *Batson,* 359 F.3d at 1197.

In conclusion, Muniz did not satisfy her burden of showing harmful error. *See McLeod*, 640 F.3d at 887 (the burden is on the party attacking an agency determination to show that prejudice resulted from error).

### B.    Medical Opinions

The Commissioner relies on medical and psychological consultants to make findings of fact about the nature of a claimant's impairments and the severity of the functional limitations they impose. 20 C.F.R. §§ 404.1527(f), 416.927(f); SSR 96-6p, 1996 WL 374180. These consultants do not treat or examine the claimant, but form their opinions by reviewing the medical evidence in

6 - OPINION AND ORDER

light of their expertise in the disability programs under the Social Security Act. An ALJ is not bound by the findings of reviewing consultants, but may not ignore their opinions and must explain the weight given to their opinions in her decision. SSR 96-6p.

The ALJ relied on Dr. Berner in this way in assessing Muniz's physical RFC. Dr. Berner reviewed the record in November 2009 and found it supported a restriction to light exertion based on mostly normal physical examinations without neurological deficits. The ALJ found Dr. Berner's opinion consistent with the record as a whole and gave it great weight in assessing Muniz's RFC. Admin. R. 22. Muniz contends the ALJ should have given Dr. Berner's opinion less weight relative to the opinions of Ruth Thomas, N.P., and Enrique Cifuentes, M.D.

Muniz established care with Thomas in June 2010 for complaints of migraine, seizures, depression, and back pain. In her physical examination, Thomas's objective findings were normal. She adjusted Muniz's medications and planned further work up for her neurological and mobility complaints. Admin. R. 558. At a one-month follow up visit, Muniz said she had been on a camping trip. Thomas's physical examination did not reveal abnormal findings and Thomas specifically noted the absence of muscle weakness and numbness in the extremities. Admin. R. 562. In August 2010, Thomas's physical examination was again unremarkable. Muniz tried a TENS unit and reported an instantaneous reduction in pain. Admin. R. 567.

This was the state of Thomas's treatment history with Muniz when Thomas completed a medical source statement worksheet. Thomas said that Muniz had major depression with marked impairment in concentration, attention, pace, and the ability to complete a normal work schedule. Thomas said Muniz could sit for two hours at a time for a total of four hours during a workday and stand continuously for only 15 minutes for a total of one hour during a workday. Muniz's lifting

ability was in the sedentary range. Thomas said she would need unscheduled rest breaks to relieve pain and fatigue and would miss work 10 days a month. She said Muniz required a seated walker to accommodate mobility problems. Admin. R. 513-17.

The ALJ gave Thomas's opinion little weight. As the ALJ correctly noted, nurse practitioners are not "acceptable medical sources" within the meaning of the regulations. 20 C.F.R. §§ 404.1513, 416.913. The opinions of such sources must be considered, but may be discounted if the ALJ provides reasons that are germane to the witness for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

The ALJ found Thomas's opinion entitled to diminished weight because it was presented on a check mark worksheet without narrative explanation of the basis of her conclusions. Admin. R. 21. An ALJ may properly discount a medical opinion that is conclusory, in checklist form, and unsupported by objective evidence or supporting rationale. *Batson*, 359 F.3d at 1195. The ALJ correctly found that Thomas's own progress notes demonstrated entirely unremarkable clinical findings. She provided no clinical findings or supporting rationale to explain why she believed Muniz would have such extreme limitations and would frequently miss work. In the absence of such supporting material, it is reasonable to infer that Thomas relied primarily on Muniz's subjective statements, which the ALJ found unreliable. An ALJ is entitled to reject an opinion that is premised primarily on subjective complaints that the ALJ properly found unreliable. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

The ALJ also discounted Thomas's opinion because of the very brief treating relationship she had at the time she filled out the form. A health care provider's opinion may be given less weight if she has not seen the patient long enough to have obtained a longitudinal picture of the

patient's impairments and presents no support for the opinion. *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). The ALJ's reasons for discounting Thomas's statement in favor of Dr. Berner's opinion are germane and legally sufficient.

On December 7, 2010, Muniz visited Dr. Cifuentes's office as a new patient and was examined by a physician's assistant. He took Muniz's subjective history and did a physical examination which was generally benign. He noted the absence of neurological deficits and found Muniz had normal gait and motor function. Muniz limited her range of motion in the lower extremities due to pain. Admin. R. 528-29. X-rays showed prominent degeneration in the lower lumbar spine, including moderate narrowing at the L4-L5 and L5-S1 disc spaces.

On December 30, 2010, Dr. Cifuentes completed a worksheet indicating that Muniz was unable to perform any substantial gainful activity due to seizures and chronic back pain. He said she had been disabled since May 2004. Admin. R. 523. There is no evidence in the record that Dr. Cifuentes examined or treated Muniz before completing the worksheet; although he presumably reviewed the progress note from his physician's assistant.

The ALJ gave little weight to this opinion. An ALJ can discount the opinion of a treating physician for clear and convincing reasons supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996). First, as the ALJ correctly noted, Dr. Cifuentes's opinion that Muniz could not work is not a medical opinion about specific functional limitations or activities Muniz could not do, but an administrative finding reserved to the Commissioner. A treating physician's opinion on such issues is not entitled to special significance. 20 C.F.R. §§ 404.1527(e), 416.927(e).

In addition, as with nurse Thomas, Dr. Cifuentes gave his opinion after a very brief treating relationship with Muniz. Indeed, there is no evidence that he examined Muniz before declaring she was disabled. He did not provide clinical findings to support his opinion and could not have obtained a longitudinal picture of her impairments. *Holohan*, 246 F.3d at 1202. An ALJ need not accept a medical opinion that is conclusory and unsupported by clinical findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). In particular, Dr. Cifuentes's assertion that Muniz had been disabled since 2004, six years before he saw her for the first time, is entirely unsupported and contrary to the record as a whole.

In March 2011, Dr. Cifuentes examined Muniz and indicated generally normal findings including normal gait and motor function. Muniz limited her range of motion in the lower extremities due to pain. Dr. Cifuentes wrote in his notes that Muniz "needs a power wheel chair for her mobility" because "she cannot ambulate properly and has an unsteady gait and she can fall." Admin. R. 549. Muniz gave a subjective history of using mobility devices, including a walker and then a manual wheelchair. She said she needed a power chair because she could no longer carry her weight. Dr. Cifuentes also indicated Muniz experienced medication side effects that left her incoherent and disoriented. Dr. Cifuentes wrote a letter on Muniz's behalf stating that she needed a caretaker for assistance with dressing, ambulation, hygiene, and with her instrumental activities of daily living. Admin. R. 609.

The ALJ gave little weight to this opinion. Admin. R. 21-22. The limitations Dr. Cifuentes asserted are inconsistent with the clinical findings in his own treatment notes. For example, contrary to his opinion that Muniz needed a wheelchair because of an unsteady gait, his progress notes reflect clinical findings of normal gait and motor function. Contrary to his opinion regarding severe

medication side effects, his progress notes do not reflect any complaint of side effects or medication adjustments to alleviate side effects. *See Bayliss*, 427 F.3d at 1216 (ALJ may properly discount a medical opinion that is unsupported by clinical findings). The ALJ also found Dr. Cifuentes's opinion internally inconsistent because he opined that Muniz required a full time caretaker but at the same time said she could independently care for her children. In addition, as the ALJ also found, Dr. Cifuentes's opinion was decisively refuted by Muniz's documented activities while incarcerated. From September 2007 until April 2009, Muniz independently performed all of her activities of daily living, including prison jobs, without a caretaker or a mobility device.

In the absence of clinical findings to support his opinion, it is reasonable to infer, as the ALJ did, that Dr. Cifuentes premised his opinion primarily on the subjective history he was told by Muniz. An ALJ is entitled to reject an opinion that is premised primarily on subjective complaints that the ALJ properly found unreliable. *Tonapetyan*, 242 F.3d at 1149.

The ALJ's reasons for discounting Dr. Cifuentes's opinion in favor of Dr. Berner's are clear and convincing and will not be disturbed. *Lester*, 81 F.3d at 830-31.

### C.    Wheelchair

Muniz contends the ALJ erred by failing to include a limitation in her RFC assessment to reflect that she is restricted to a wheelchair. An ALJ is not required to incorporate limitations she found unsupported by the evidence in the record. *Batson*, 359 F.3d at 1197-98; *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001). Here the ALJ properly discounted Muniz's subjective statements and Dr. Cifuentes's opinion and found no other credible evidence that Muniz is restricted to a wheelchair.

In any event, any error in the omission of a wheelchair restriction was harmless. The ALJ elicited testimony from the VE based on a hypothetical person with Muniz's RFC and vocational factors who was restricted to a wheelchair. The VE testified that several hundred thousand sedentary jobs exist in the national economy that such a person could perform. Admin. R. 52. Accordingly, the ALJ's nondisability determination remains supported by the record despite the alleged error. *See Carmickle*, 533 F.3d at 1162 (error is harmless if the nondisability determination remains supported despite the error).

### III.   Appeals Council's action

On September 23, 2011, Muniz asked the Appeals Council to review the ALJ's hearing decision. Admin. R. 7. The Appeals Council declined to review the decision. Admin. R. 1. The ALJ's decision then became the final decision of the Commissioner. Only a final decision of the Commissioner is subject to judicial review under the Social Security Act. 42 U.S.C. § 405(g); *Sims v. Apfel*, 530 U.S. 103, 107 (2000); *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011); 20 C.F.R. §§ 404.981, 416.1481.

Muniz contends the Appeals Council erred by failing to provide her with a transcript of the oral testimony from her administrative hearing before declining her request to review the ALJ's decision. This argument relies on the factual claim that she submitted a letter dated September 21, 2011, in which she requested a copy of the transcript and an extension of time for filing a brief to the Appeals Council. The argument fails because the alleged letter does not appear in the case record and Muniz failed to show that it was properly submitted to the Appeals Council.

Even if Muniz properly submitted the request and the Appeals Council erred by failing to act on it, the omission by the Appeals Council was not a final decision of the Commissioner for the

purposes of section 405(g). The Social Security Act does not authorize this court to review any action or inaction of the Appeals Council in the circumstances of this case. 42 U.S.C. § 405(g). The only matter before this court is the ALJ's hearing decision which became the final decision of the Commissioner. Muniz is free to attack the final decision based on the transcript of oral testimony, which she now has, but she cannot challenge the acts or omissions of the Appeals Council.

Muniz tries to raise a constitutional claim by arguing that the alleged failure to provide a transcript of the hearing denied her due process. This argument also fails. Muniz had a full and fair opportunity to present her claims to the ALJ and to challenge the ALJ's decision in this court. *See Mathews v. Eldrige*, 424 U.S. 319, 333-34 (1976) (Due process requires a meaningful hearing before an individual is deprived of a property interest in disability benefits). The allegation here falls far short of depriving Muniz of her right to due process.

Finally, aside from the foregoing shortcomings of her argument, Muniz cannot prevail for the additional reason that she has not shown she was harmed by the Appeals Council's alleged error. She now has the hearing transcript and the opportunity to challenge the ALJ's decision based on the oral hearing testimony. She has not identified grounds for remand that she would have presented to the Appeals Council, had she received the transcript earlier. Her brief does not offer any persuasive argument that the Appeals Council's conclusion or the Commissioner's final decision might have been different if she had received the transcript earlier. In short, Muniz failed to provide a basis on which to find that her substantial rights were affected by the Appeals Council's decision to decline review without providing a transcript. Accordingly, even if there was error on the part of the Appeals Council, it was harmless. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (error is harmless where the claimant fails to show at least a substantial likelihood of prejudice);

*Molina*, 674 F.3d at 1115 (error is harmless where it is inconsequential to the nondisability determination in light of the record as a whole); *Carmickle*, 533 F.3d at 1162 (error is harmless if the nondisability determination remains supported despite the error).

## **CONCLUSION**

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

DATED this ___29ᵗʰ___ day of July, 2013.

_____
Robert E. Jones, Senior Judge
United States District Court